# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
# EASTERN DIVISION

**ERICKA PEARSON**                                                    **PLAINTIFF**

v.                                      **CIVIL ACTION NO. 2:17-CV-144-KS-MTP**

**WAL-MART STORES, INC.,** *et al.*                            **DEFENDANTS**

## MEMORANDUM OPINION AND ORDER

For the reasons below, the Court **denies** Defendant's Motion to Exclude the Expert Testimony of Mark Williams [51] and **denies** Defendant's Motion for Summary Judgment [53].

## I. BACKGROUND

This is a premises liability case. Plaintiff slipped and fell in the parking lot of Sam's Club Store #6503 in Hattiesburg, Mississippi. Plaintiff contends that drainpipes on the side of the store deposited rainwater and algae from the roof onto a pedestrian walkway outside the store, collecting in the parking lot in front of the store's exit. Plaintiff contends that Defendant knew or should have known of the hazardous condition. She claims Defendant was negligent and demands a variety of damages. Defendant filed a Motion to Exclude [51] the testimony of Plaintiff's expert and a Motion for Summary Judgment [53].

## II. MOTION TO EXCLUDE EXPERT TESTIMONY [51]

First, Defendant argues that the Court should exclude the testimony of Plaintiff's expert, Mark Williams. Plaintiff contends that drainpipes on the side of the

store deposited rainwater and algae from the roof onto a pedestrian walkway outside the store, and that the water and algae collected in the parking lot in front of the store's exit. Williams intends to testify:

> Dangerous conditions that caused Pearson's fall and resulting injury include stagnant water contaminated with algae on the asphalt drive. The slippery mixture was formed by water and algae on the roof that accumulated in a pavement depression as a result of improper discharge and drainage across the pedestrian walkway surface.

Exhibit A to Motion to Exclude at 5, *Pearson v. Wal-Mart Stores, Inc.*, No. 2:17-CV-144-KS-MTP (S.D. Miss. Dec. 21, 2018), ECF No. 51-1. Williams contends that the "pavement where Pearson slipped and fell was not properly sloped to drain." *Id.* at 9. Accordingly, he believes that "[i]t was foreseeable to Sam's Club that water contaminated with organic matter from the roof would flow down the rain water leaders, across the concrete walkway, accumulate in the pavement depression, and remain stagnant each time it rained." *Id.* at 5.

Rule 702 provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> > (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> >
> > (b) the testimony is based on sufficient facts or data;
> >
> > (c) the testimony is the product of reliable principles and methods; and
> >
> > (d) the expert has reliably applied the principles and methods to

2

the facts of the case.

FED. R. EVID. 702. Therefore, "when expert testimony is offered, the trial judge must perform a screening function to ensure that the expert's opinion is reliable and relevant to the facts at issue in the case." *Watkins v. Telsmith, Inc.*, 121 F.3d 984, 988-89 (5th Cir. 1997).

In *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993), the Supreme Court provided a nonexclusive list of "general observations intended to guide a district court's evaluation of scientific evidence," including: "whether a theory or technique can be (and has been) tested, whether it has been subjected to peer review and publication, the known or potential rate of error, and the existence and maintenance of standards controlling the technique's operation, as well as general acceptance." *Watkins*, 121 F.3d at 989 (punctuation omitted).

> Not every guidepost in *Daubert* will necessarily apply to expert testimony based on engineering principles and practical experience, but the district court's preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue is no less important.

*Id.* at 990-91 (punctuation omitted).

Expert testimony must be supported by "more than subjective belief or unsupported speculation." *Paz v. Brush Eng'red Materials, Inc.*, 555 F.3d 383, 388 (5th Cir. 2009). It "must be reliable at each and every step or it is inadmissible. The reliability analysis applies to all aspects of an expert's testimony: the methodology,

3

the facts underlying the expert's opinion, the link between the facts and the conclusion, *et alia.*" *Seaman v. Seacor Marine LLC*, 326 F. App'x 721, 725 (5th Cir. 2009). "Overall, the trial court must strive to ensure that the expert, whether basing testimony on professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *United States v. Valencia*, 600 F.3d 389, 424 (5th Cir. 2010).

But the Court's role as gatekeeper is not meant to supplant the adversary system because "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596. While the Court should focus solely on the proposed expert's "principles and methodology, not on the conclusions that they generate," *id.* at 595, "nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence connected to existing data only by the *ipse dixit* of the expert." *GE v. Joiner*, 522 U.S. 136, 146, 118 S. Ct. 512, 139 L. Ed. 2d 508 (1997).

In summary, the proponent of expert testimony must demonstrate that the proposed expert is qualified, that the testimony is reliable, and that it is relevant to a question of fact before the jury. *United States v. Hicks*, 389 F.3d 514, 525 (5th Cir. 2004). The proponent must prove these requirements "by a preponderance of the evidence." *United States v. Fullwood*, 342 F.3d 409, 412 (5th Cir. 2003).

## A. *Qualification*

First, Defendant argues that Williams, an architect, is not qualified to provide expert testimony regarding the growth, movement, or slipperiness of algae. Rule 702 provides that an expert may be qualified by "knowledge, skill, experience, training, or education . . . ." FED. R. EVID. 702. Expert testimony "serves to inform the jury about affairs not within the understanding of the average man." *United States v. Moore*, 997 F.2d 55, 57 (5th Cir. 1993). Therefore, "[a] district court should refuse to allow an expert witness to testify if it finds that the witness is not qualified to testify in a particular field or on a given subject." *Wilson v. Woods*, 163 F.3d 935, 937 (5th Cir. 1999).

A proposed expert does not have to be "highly qualified in order to testify about a given issue. Differences in expertise bear chiefly on the weight to be assigned to the testimony by the trier of fact, not its admissibility." *Huss v. Gayden*, 571 F.3d 442, 452 (5th Cir. 2009). Likewise, "[a] lack of personal experience . . . should not ordinarily disqualify an expert, so long as the expert is qualified based on some other factor provided by Rule 702 . . . ." *United States v. Wen Chyu Liu*, 716 F.3d 159, 168 (5th Cir. 2013). However, regardless of its source, "the witness's . . . specialized knowledge," must be "sufficiently related to the issues and evidence before the trier of fact that the witness's proposed testimony will help the trier of fact." *Id.* at 167.

Williams has a degree in architecture. Exhibit H to Motion to Exclude at 2, *Pearson v. Wal-Mart Stores, Inc.*, No. 2:17-CV-144-KS-MTP (S.D. Miss. Dec. 21,

5

2018), ECF No. 51-8. He worked in a standard architecture practice for over a decade before he joined Robson Forensic, Inc. in 2002 as a "forensic architect," providing expert testimony in litigation. *Id.* at 2-3; Exhibit A [51-1], at 1. He claims to have designed buildings similar to the one at issue in this case, Exhibit H [51-8], at 3, and he is a registered architect in eleven states. *Id.* at 2.

Williams stated via affidavit that his "education, training, and experience included the design, construction, and maintenance of commercial buildings and parking lots." Exhibit A [51-1], at 1. Moreover, "[a]s a registered architect," he is "often called upon to evaluate the safety and compliance of various commercial facilities and parking lots with respect to applicable building and property maintenance codes, and relevant industry standards for storm drainage and walkway safety." *Id.* at 2. He holds himself out as an expert in "architecture and facility safety." Exhibit H [51-8], at 5. He has experience "working with general contractors, construction managers, owners, [and] subcontracts" on "over 100 buildings." *Id.* He claims to have provided expert testimony in at least a half dozen cases over the past sixteen years involving improper drainage and contaminants on walk way surfaces. *Id.* at 9.

In the Court's opinion, Plaintiff has demonstrated that Williams is qualified to provide the proposed expert testimony in his report. One of an architect's primary tasks is to anticipate how water will interact with a structure and design features to control that water. Roof and site drainage are key issues in every design and

construction project. Defendant attempts to sidestep this obvious fact by attacking Williams' credentials as an algae expert. But anticipating this type of issue – a drainage problem and the resulting property damage and/or impact – is part of an architect's job. Williams' qualifications are not unimpeachable, but a proposed expert does not have to be "highly qualified in order to testify about a given issue. Differences in expertise bear chiefly on the weight to be assigned to the testimony by the trier of fact, not its admissibility." *Huss*, 571 F.3d at 452. Defendant will have the opportunity to cross-examine Williams and highlight his lack of algae experience or training.

### B. *Reliability*

Next, Defendant argues that Williams' opinions are unreliable because they are not based on sufficient facts or data. The reliability of proposed expert testimony "is determined by assessing whether the reasoning or methodology underlying the testimony is scientifically valid." *Knight v. Kirby Inland Marine, Inc.*, 482 F.3d 347, 352 (5th Cir. 2007). As noted above, "the expert's testimony must be reliable at each and every step or it is inadmissible." *Seaman*, 326 F. App'x at 725. Therefore, Rule 702 specifically requires that an expert's testimony be based upon sufficient facts or data. FED. R. EVID. 702(b). Phrased differently, proposed expert testimony "must be supported by appropriate validation – i.e. good grounds, based on what is known." *Daubert*, 509 U.S. at 509 (punctuation omitted). "Where an expert's opinion is based on insufficient information, the analysis is unreliable." *Paz*, 555 F.3d at 388; *see also*

7

*Seaman*, 326 F. App'x at 725. "Although the *Daubert* reliability analysis is flexible and the proponent of expert testimony need not satisfy every one of its factors, the existence of sufficient facts is . . . in all cases mandatory." *Moore v. Int'l Paint, LLC*, 547 F. App'x 513, 515 (5th Cir. 2013). "[A] district court has broad discretion to determine whether a body of evidence relied upon by an expert is sufficient to support that expert's opinion." *Knight*, 482 F.3d at 354.

Williams' opinions are not wholly unsupported. He conducted a "site inspection of the roof over the entrance/exit vestibules, the exterior porch, drain pipes, and the concrete sidewalk and asphalt drive on July 6, 2018" – approximately four years after the accident. Exhibit A [51-1], at 3. His "inspection consisted of recording measurements, taking photographs, and graphically documenting relevant site conditions." *Id.* According to Williams:

> The western end of the roof over the entrance/exit vestibules had standing water surrounding the two cast iron drains that was approximately 1.5 to 2 inches deep. The water covered an area about 10 feet x 20 feet and contained widespread growth of algae and a thick soup of organic matter. The circumference of both drains was clogged with silt, muck, and debris. Grass was growing next to the primary drain. The surface of the white TPO membrane [roofing material] was stained from long term moisture.

*Id.* On the sidewalk, Williams noted:

> . . . extensive erosion of laitance . . . in a 10-20 inch swath that begins below the drain pipes, travels north across the walkway, and connects to the depression in the asphalt drive where Pearson slipped and fell. The surface and exposed aggregate within this swath was wet and stained green along its full length. At the asphalt driveway algae was trapped in the pavement depression.

8

*Id.* While conducting his site inspection, Williams poured "about six gallons of water onto the sloping concrete curb immediately below the drain pipes." *Id.* at 4. He "observed the water following a path across the sidewalk to the asphalt drive and accumulating in a pool in the same location where Pearson slipped and fell." *Id.*

Williams also reviewed a recorded interview with Plaintiff. Exhibit H [51-8], at 11. He read transcripts of the depositions of Plaintiff, Tara Jessup, Myra Catlett, and Claudel Duckworth, in addition to the discovery materials produced in this case. *Id.* The discovery materials included photographs of the site that were taken immediately after the accident. *Id.* He consulted NOAA weather records from the time of the accident, Exhibit A [51-1], at 4, and two publications concerning drainage conditions and the growth of algae. Exhibit H [51-8], at 31.

Defendant argues that Williams has no evidence that algae or organic growth was on the roof in August 2014 when the accident occurred, or that water flowing from the roof through the drainpipe could carry such algae to the sidewalk and parking lot. Williams testified that the amount of organic growth in the standing water indicated that this had been an issue for some time. *Id.* at 20-21. He also testified that the staining on the TPO membrane, the degree to which the drainpipe was clogged, and the staining on the pipe outlet and concrete also support his opinion that the algae has been present for years. *Id.* Finally, he noted that the building was remodeled two years before Plaintiff's accident, adding the parapets which created the conditions that likely led to the algae growth. *Id.* at 22.

In the Court's opinion, Williams' lack of direct evidence concerning the conditions on the roof in 2014 is not enough reason to strike his testimony. "Unless wholly unreliable, the data on which the expert relies goes to the weight and not the admissibility of the expert opinion." *Rosier v. Wood Towing, LLC*, No. 07-1265, 2009 WL 982659, at *1 (E.D. La. Apr. 8, 2009) (citing *United States v. 14.38 Acres of Land*, 80 F.3d 1074, 1077 (5th Cir. 1996)). Williams' opinions are not wholly unsupported. Defendant has plenty of fodder for cross-examination, but Williams' opinions have enough support to pass muster under Rule 702.

Defendant also argues that Williams failed to perform testing with a tribometer, a device used to measure friction on surfaces. Again, this goes to the weight of the testimony, not its admissibility. *Cf. Viacom Int'l v. IJR Capital Investments, LLC*, 891 F.3d 178, 197 (5th Cir. 2018) (flaw in survey method went to weight of expert's testimony, rather than admissibility); *Brown v. Ford Motor Co.*, 121 F. Supp. 3d 606, 612 (S.D. Miss. 2015) (omission in expert's methodology went to the weight of the testimony, rather than admissibility). "[E]xpert opinions which overlook certain data are not typically excluded on that basis." *Gulf Restoration Network v. Oscar Renda Contracting, Inc.*, No. 1:17-CV-130-LG-RHW, 2018 WL 6579171, at *2 (S.D. Miss. Dec. 13, 2018) (citing *Moss v. Ole South Real Estate, LLC*, 933 F.2d 1300, 1307 (5th Cir. 1991)).

For these reasons, the Court denies Defendant's Motion to Exclude [51] the testimony of Plaintiff's expert, Mark Williams.

## III. MOTION FOR SUMMARY JUDGMENT [53]

Defendant also filed a Motion for Summary Judgment [53]. Rule 56 provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *see also Sierra Club, Inc. v. Sandy Creek Energy Assocs., L.P.*, 627 F.3d 134, 138 (5th Cir. 2010). "Where the burden of production at trial ultimately rests on the nonmovant, the movant must merely demonstrate an absence of evidentiary support in the record for the nonmovant's case." *Cuadra v. Houston Indep. Sch. Dist.*, 626 F.3d 808, 812 (5th Cir. 2010) (punctuation omitted). The nonmovant "must come forward with specific facts showing that there is a genuine issue for trial." *Id.* "An issue is material if its resolution could affect the outcome of the action." *Sierra Club*, 627 F.3d at 138. "An issue is 'genuine' if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party." *Cuadra*, 626 F.3d at 812.

The Court is not permitted to make credibility determinations or weigh the evidence. *Deville v. Marcantel*, 567 F.3d 156, 164 (5th Cir. 2009). When deciding whether a genuine fact issue exists, "the court must view the facts and the inference to be drawn therefrom in the light most favorable to the nonmoving party." *Sierra Club*, 627 F.3d at 138. However, "[c]onclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation do not adequately substitute for specific facts showing a genuine issue for trial." *Oliver*

*v. Scott*, 276 F.3d 736, 744 (5th Cir. 2002).

In a premises liability case, the plaintiff must prove the four elements of common-law negligence: (1) duty, (2) breach of duty, (3) causation, and (4) damages. *Rogers v. Sunbelt Mgmt. Co.*, 52 F. Supp. 3d 816, 822 (S.D. Miss. 2014). The duty owed to the plaintiff depends on his or her status as an invitee, licensee, or trespasser. *Doe v. Miss. State Fed'n of Colored Women's Club Housing for the Elderly in Clinton, Inc.*, 941 So. 2d 820, 826 (Miss. Ct. App. 2006). Therefore, "[p]remises liability analysis under Mississippi law requires three determinations: (1) legal status of the injured person, (2) relevant duty of care, and (3) defendant's compliance with that duty." *Wood v. RIH Acquisitions MS II LLC*, 556 F.3d 274, 275 (5th Cir. 2009); *see also Leffler v. Sharp*, 891 So. 2d 152, 156 (Miss. 2004).

It is undisputed that Plaintiff was an invitee at the time of the accident. "Mississippi law imposes upon a business owner or operator a duty to the invitee to keep its premises in a reasonably safe condition and to warn of dangerous conditions which are not readily apparent to the invitee." *K-Mart Corp. v. Hardy*, 735 So. 2d 975, 981 (Miss. 1999). However, a business owner is not an insurer against all accidents and injuries that may occur on its premises. *Anderson v. B. H. Acquisitions, Inc.*, 771 So. 2d 914, 918 (Miss. 2000). Mere proof of a fall within a business is insufficient to recover on a negligence claim. *Rod v. Home Depot USA, Inc.*, 931 So. 2d 692, 695 (Miss. Ct. App. 2006). To prove a premises liability claim, a plaintiff-invitee must show either:

(1) a negligent act of the defendant caused her injury; (2) the defendant had actual knowledge of the dangerous condition, but failed to warn the plaintiff; or (3) the defendant should have known about the dangerous condition, in that the dangerous condition existed for a sufficient amount of time to impute constructive knowledge to the defendant.

*Id.* at 694-95.

## A.     *Dangerous Condition/Normally Encountered Danger*

First, Defendant argues that the puddle in which Plaintiff slipped was not a dangerous condition of which it had a duty to warn her. Rather, Defendant argues that a puddle of rain water is a "normally encountered" danger that invitees should expect in a parking lot. Under Mississippi law, "there is a difference between dangers which are usual and which customers normally expect to encounter on the business premises and claimed physical defects on the defendant's premises . . . which may be found to be unusual and unreasonably dangerous." *Fulton v. Robinson Indus., Inc.*, 664 So. 2d 170, 174-75 (Miss. 1995) (punctuation omitted). "Normally encountered dangers, such as thresholds, curbs, and steps, will not be considered hazardous conditions . . . ." *Mack v. Waffle House, Inc.*, No. 1:06-CV-559-RHW, 2007 WL 1153116, at *2 (S.D. Miss. Apr. 18, 2007) (citing *Tate v. S. Jitney Jungle Co.*, 650 So. 2d 1347, 1351 (Miss. 1995); *McGovern v. Scarborough*, 566 So. 2d 1225, 1228 (Miss. 1990)). Accordingly, Mississippi courts have held that "normally occurring dangers" such as doorway thresholds,[1] cracks[2] and crevices[3] in sidewalks, uneven seams in

---

[1] *McGovern*, 566 So. 2d at 1228.
[2] *Mack*, 2007 WL 1153116 at *2.
[3] *City of Greenville v. Laury*, 159 So. 121, 122 (Miss. 1935).

asphalt paving,[4] curbs,[5] and potholes in parking lots[6] are not hazardous conditions of which a premises owner must warn an invitee.

Plaintiff has presented evidence creating a factual dispute as to whether the puddle in the parking lot was a "normally occurring danger" that a customer should expect to encounter on a business's premises. Plaintiff testified that she slipped in "water mixed with some green slimy stuff." Exhibit A to Response at 20, *Pearson v. Wal-Mart Stores, Inc.*, No. 2:17-CV-144-KS-MTP (S.D. Miss. Jan. 16, 2019), ECF No. 60-1. She said "[i]t looked like it was coming out the drain in front of the store." *Id.* at 22.

Likewise, Plaintiff's mother testified: "It was like slime. It was like standing water, how it builds up and, you know, then it gets slippery and slimy. That green, algae like stuff." Exhibit B to Response at 10, *Pearson v. Wal-Mart Stores, Inc.*, No. 2:17-CV-144-KS-MTP (S.D. Miss. Jan. 16, 2019), ECF No. 60-2. And: "[F]rom . . . where we were standing looking at it, it was dripping out that drain that was from the building." *Id.* at 7.

Also, as noted above, Plaintiff's expert intends to provide the following testimony:

> Dangerous conditions that caused Pearson's fall and resulting injury include stagnant water contaminated with algae on the asphalt drive. The slippery mixture was formed by water and algae on the roof that accumulated in a pavement depression as a result of improper discharge

---

[4] *Knight v. Picayune Tire Serv., Inc.*, 78 So. 3d 356, 359 (Miss. Ct. App. 2011).
[5] *Stanley v. Morgan v. Lindsey, Inc.*, 203 So. 2d 473, 477 (Miss. 1967).
[6] *Quick v. Strategic Restaurants Acquisition Co., Inc.*, No. 3:12-CV-301-CWR-LRA, 2013 WL 1305583, at *2 (S.D. Miss. Mar. 28, 2013).

and drainage across the pedestrian walkway surface.

Exhibit A [51-1], at 5.

Defendant has not cited any case law applying the "normally encountered danger" doctrine to a puddle of water mixed with algae caused by improper drainage. Of course, Defendant contends that there was no algae, but that's a question for the jury. Plaintiff has presented enough admissible evidence to create a genuine dispute of material fact on this issue.

### B. *Creation/Knowledge*

Next, Defendant argues that Plaintiff can not prove that it created the alleged dangerous condition or knew that it existed. First, Plaintiff's expert, Mark Williams, contends that Defendant caused the alleged hazardous condition by improper drainage of rain water from the building's roof. *Id.* at 5. In his report, he stated that "[i]t was foreseeable to Sam's Club that water contaminated with organic matter from the roof would flow down the rain water leaders, across the concrete walkway, accumulate in the pavement depression, and remain stagnant each time it rained." *Id.* This evidence creates a factual dispute as to whether Defendant caused the alleged hazardous condition.

Second, Plaintiff presented an affidavit from a former employee of Defendant, Jordan Jackson. Jackson was a "cart pusher." Exhibit C to Response at 1, *Pearson v. Wal-Mart Stores, Inc.*, No. 2:17-CV-144-KS-MTP (S.D. Miss. Jan. 16, 2019), ECF No. 60-3. He was "in charge of collecting shopping carts from the parking lot area and

15

bringing them back inside the store," and he was there on the date of Plaintiff's accident. *Id.* He stated:

> Prior to August 1, 2014, I observed water being discharged from a drain pipe located to the left of the exit door on the building. The water flowed from the pipe and across the walkway where store customers exited the store to enter the parking lot. I observed the water contained green algae that would pool up near the exit door. The water and algae created a dangerous condition in front of the store. The area would become extreme slippery. I personally observed 4 or 5 people fall in the same area where Ms. Ericka Pearson fell prior to August 2014. Each of these falls occurred when the individuals stepped in the algae water that was being discharged from the roof.
>
> After observing several falls before August 1, 2014, I met with management at the store and advised them that the water coming from the roof was mixed with algae and was making the exit area extremely slippery. . . . I told them about the falls I had observed and told them that we need to find a way to divert the water or put warning signs out for customers. I told them that somebody was going to get hurt if we didn't do something to warn customers this was a dangerous area and to be careful. Management was unwilling to make any changes to the property.

*Id.* This evidence creates a genuine dispute of material fact as to whether Defendant knew about the alleged hazardous condition.

## IV. CONCLUSION

For these reasons, the Court **denies** Defendant's Motion to Exclude the Expert Testimony of Mark Williams [51] and **denies** Defendant's Motion for Summary Judgment [53].

SO ORDERED AND ADJUDGED this 5th day of June, 2019.

/s/ Keith Starrett
KEITH STARRETT
UNITED STATES DISTRICT JUDGE